UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BENJAMIN PHILLIPS,          :     Case No. 1:08-cv-333
                            :
        Plaintiff,          :     Chief Judge Susan J. Dlott
                            :     Magistrate Judge Timothy S. Black
vs.                         :
                            :
COMMISSIONER OF             :
SOCIAL SECURITY,            :
                            :
        Defendant.          :


**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to a period of disability and disability income benefits. (*See* Administrative Transcript ("Tr.") (Tr. 15-23) (ALJ's decision)).

## I.

On March 24, 2004, Plaintiff filed an application for disability insurance benefits alleging a disability onset date of November 10, 2003, due to degenerative disc disease at L5-S1, right S1 radiculitis, nerve damage of the right leg since back surgery with numbness down to the right foot, and severe lower back and right leg pain. (Tr. 68-69).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Upon denial of Plaintiff's claims on the state agency level, he requested a hearing *de novo* before an ALJ. A hearing was held on April 18, 2006, at which Plaintiff appeared with counsel and testified. (Tr. 685-725). A vocational expert, Dr. George E. Parsons, and a medical expert, Dr. Arthur Lorber, were also present and testified. (*Id.*)

On August 3, 2006, the ALJ issued a decision finding Plaintiff was disabled from November 10, 2003 through November 11, 2004, and on November 11, 2004, medical improvement occurred that was related to Plaintiff's ability to work. (Tr. 11-23). After the Appeals Council considered additional evidence Plaintiff submitted, it denied Plaintiff's request for review (Tr. 6-9, 10), and the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

Plaintiff was 38 years old on the date the ALJ found that medical improvement occurred. (Tr. 56). Plaintiff is a college graduate and previously worked as a computer analyst, senior programmer analyst, and senior systems analyst.[2] (Tr. 69-71, 76, 78-83). He is married and has three children. (Tr. 723).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1.  The claimant met the insured status requirements of the Social Security Act as of November 10, 2003, the date the claimant became disabled.

2.  The claimant has not engaged in substantial gainful activity since

---

[2]    In these capacities Plaintiff earned between $70,000 - $94,000, and was on track to becoming a manager. (Tr. 723).

November 10, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. At all times relevant to this decision, the claimant has had the following severe combination of impairments: back pain, status post fusion at L5-S1; and obesity (20 CFR 404.1520(c)).

4. From November 10, 2003 through November 11, 2004, the period during which the claimant was disabled, the severity of the claimant's degenerative disc disease met the criteria of section(s) 1.04A of 20 CF Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

5. The claimant was under a disability, as defined by the Social Security Act, from November 10, 2003 through November 11, 2004 (20 CFR 404.1520(d)).

6. Medical improvement occurred as of November 11, 2004, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).

7. Beginning on November 11, 2004, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).

8. The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals a listing (20 CFR 404.1594(c)(3)(i)).

9. After careful consideration of the entire record, the undersigned finds that, beginning on November 11, 2004, the claimant has had the residual functional capacity to lift up to 10 pounds occasionally and up to 5 pounds frequently; sit up to 6 hours per 8-hour workday; and stand up to 2 hours per 8-hour workday. He requires the option to sit and stand. He can do occasional bending, climbing stairs, stooping, or kneeling; and the claimant cannot work around unprotected heights, vibration, moving machinery, and slippery areas. He should avoid crawling, balancing, or climbing ladders.

10. Beginning on November 11, 2004, the claimant has been capable of performing past relevant work as a senior programmer analyst. This work

does not require the performance of work-related activities precluded by the claimant's current residual functional capacity (20 CFR 404.1565).

11.     The claimant's disability ended on November 11, 2004 (20 CFR 404.1594(f)(7)).

(Tr. 18 - 22).

In summary, the ALJ concluded that Plaintiff was not under disability as defined by the Social Security Regulations, and he was therefore not entitled to a period of disability or disability insurance benefits.  (Tr. 23).

On appeal, Plaintiff argues that: (1) the ALJ erred in failing to accept the well-supported restriction of sitting no more than 10 minutes at a time, and the well-supported opinion of the treating specialist that the Plaintiff could not sustain sedentary work, and finding, as a result, that he was capable of performing sustained remunerative employment; and (2) the ALJ erred in finding Plaintiff no longer met Listing 1.04 after November 11, 2004, thereby rejecting the opinion of the treating specialists.  (Doc. 8 at 1-2).

Upon careful review, the undersigned finds Plaintiff's assignments of error to be well-taken and dispositive, and, accordingly, hereby recommends that judgment be entered in favor of Plaintiff awarding benefits.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  In performing this review, the Court considers the record as a whole.  *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### A.

For his first assignment of error, Plaintiff maintains that the ALJ erred in failing to accept the well-supported restriction of sitting no more than 10 minutes at a time, and the well-supported opinion of the treating specialist that the claimant could not sustain sedentary work.

The record reflects that:

Plaintiff underwent an anterior lumbar interbody infusion with cage and bone morphogenic protein, discectomy, and transperitoneal exposure of the lumbar spine in December 2003. (Tr. 339-54). Upon discharge, Dr. Pledger diagnosed Plaintiff with degenerative disc disease at L5-S1. (Tr. 339).

In April 2004, Plaintiff was evaluated for a right lumbosacral radiculopathy and right leg mononeuropathies with an electromyography. (Tr. 437-38). Dr. Quinlan interpreted the test and noted that the nerve conduction studies of the right leg were normal and the needle exam showed mildly enlarged motor unit potentials without fibrillation in the right medial gastrocnemius, biceps femoris, and vastus lateralis muscles. (Tr. 437). Dr. Quinlan indicated that there was EMG evidence of mild chronic right lumbosacral radiculopathies (L3 and S1). (*Id.*)

A June 2004 MRI of Plaintiff's lumbar spine demonstrated status post surgical arthrodesis accompanied by enhancing granulation tissue formation along the posterior margin of the L5-S1 disc space, effacing the L5 nerve root sleeve; L5 right pars linear signal hypointensity, most compatible with spondylolysis; mid to lower lumbar degenerative facet arthropathy resulting in mild neural foraminal stenosis bilaterally; and diminished L5 anterior vertebral body height for which post-surgical change was favored over compression deformity. (Tr. 469).

Dr. Jacquemin examined Plaintiff in November 2004, about eleven months after

his anterior lumbar interbody fusion L5-S1. (Tr. 481). Upon examination, Plaintiff's gait had a slight limp on the right side, but bilateral lower extremity motor function was normal and sensation was intact throughout except for a patchy decrease in the right foot. (*Id*.) Straight leg raising was negative except for back pain on the right side. (*Id*.) There was no cyanosis, clubbing, or edema, and vasculature was intact. (*Id*.) Dr. Jacquemin discussed Plaintiff's treatment options and was reluctant to offer any surgical procedure, but instead recommended pain management and referred Plaintiff to Dr. Atluri and Dr. Minhas. (*Id*.)

On February 17, 2005, Ms. Anne Marciniak, PT, Industrial Rehab Director, did a Functional Capacity Evaluation ("FCE") at the request of Plaintiff's long-term disability provider. (Ex. 17F; Tr. 446-465). Ms. Marciniak noted that "sitting was performed for up to 10 minutes in a chair one time during the evaluation" and that the remainder of the "sitting" time was spent leaned against an elevated table or the back of chair. (Ex. 17F-2,6; Tr. 447-51). Included with the FCE is an extensive timeline of the evaluation, which clearly substantiates Plaintiff's inability to sit longer than 10-minute intervals. (Ex. 17F-18-19; Tr. 463-64). Additionally, Ms. Marciniak makes a point of stating that Plaintiff demonstrated consistent effort during the FCE, displayed no self-limiting behavior, and demonstrated 0 out of 5 Waddell signs.[3] (Ex. 17F-1,5; Tr. 446-450). Furthermore, the

---

[3] Waddell signs are a group of physical signs that may indicate non-organic or psychological component to chronic low back pain. Historically they have been used to detect "malingering" patients with back pain.

long-term disability provider maintained surveillance of Plaintiff's activities on three

separate days. (Tr. 452). Importantly, it was found that while Plaintiff did drive to local

establishments, the time in transit was never significantly more than 10 minutes, which is

consistent with his presentation during the FCE. (Ex. 17, F-7; Tr. 452). Additionally, his

presentation during the FCE was consistent with his presentation and activity during the

surveillance period.[4] (*Id.*)

A July 2005 MRI of Plaintiff's lumbar spine revealed status post fusion at the L5-

S1 disc space level with disc space fusion cages; there was some enhancing scar tissue

identified within the right lateral recess surrounding the right S1 nerve root, however, no

significant mass effect upon the nerve root or thecal sac was appreciated;

peripheralization of the nerve roots within the thecal sac at the L5-S1 disc space level;

findings could be seen with an arachnoiditis.[5] (Tr. 643).

In August 2005, Dr. Jacquemin responded to correspondence from Plaintiff's

attorney, indicating that Plaintiff's impairments met the criteria of Listings 1.04A and

---

[4] For example: "The insured walked with a pronounced limp while utilizing a walking cane in his right hand"; "Individual matching client's appearence noted walking with child using a cane in his right hand with moderate gait deviations and taking 20 steps entering Target"; "Individual matching client's appearance noted walking to curb with cane hanging from his pocket. Total of 18 steps observed with following gait deviations: right lateral trunk lean during stance phase of gait and right hip external rotation with toe out." (Tr. 452).

[5] Arachnoiditis is a neutopathic disease caused by the inflammation of the arachnoid, one of the membranes that surround and protect the nerves of the central nervous system, including the brain and spinal cord. The swollen arachnoid can lead to a host of painful and debilitating symptoms. Chronic pain is common, including neuralgia. Numbness and tingling of the extremities is frequent in patients due to spinal cord involvement.

1.04B of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 638-40). He reported Plaintiff's diagnosis as L5-S1 nerve root compression on the right, confirmed by an MRI. (Tr. 640). Dr. Jacquemin also noted that Plaintiff must change positions every hour. (*Id*.) He also wrote "yes" next to the statement "[e]ven though [Plaintiff] does not completely meet the Listing, in my opinion, he is disabled from all employment." (*Id*.) Dr. Jacquemin also reported that he believed Plaintiff had continuing problems including radiculopathy and possible chronic neuropathic pain that precluded him from performing his previous job or sedentary work because of the requirements of sitting six to eight hours per day. (Tr. 642). Dr. Jacquemin did not believe that, even with the ability to move and take breaks, Plaintiff would be able to return to these types of positions. (*Id*.)

Dr. Jacquemin saw Plaintiff in January 2006, and Plaintiff reported that he had a new pain on the right side that traveled up his back and increasing pain in the right thigh, but overall, he was doing okay at home. (Tr. 651). Upon examination, Dr. Jacquemin noted bilateral lower extremity with intact sensation throughout, and 4+/5 motor function symmetric throughout. (*Id*.) Plaintiff had increased pain with motor testing in the lower extremity. (*Id*.) Dr. Jacquemin diagnosed low back pain and instructed Plaintiff to continue activity as tolerated. (*Id*.) There was no gross evidence of any neural compression. (*Id*.)

A January 2006 MRI of Plaintiff's lumbar spine revealed L5-S1 discectomy with fusion intact; no change in small amount of right epidural fibrosis since the MRI of July

2005; no recurrent disc herniation or spinal stenosis. (Tr. 652). There was no change in the peripheralization of otherwise normal appearing nerve roots in cauda equina which could be seen as a normal variant or an arachnoiditis. (*Id.*)

Dr. Lorber reviewed the record evidence and testified as a medical expert at the administrative hearing. He stated that he did not accept the diagnosis of arachnoiditis because arachnoiditis usually resulted from very unusual trauma to the spine or a post surgical infection, not from a routine procedure as Plaintiff underwent. (Tr. 699). Arachnoiditis could develop in the absence of those factors, but it would be extremely rare and unusual. (Tr. 699-700). Dr. Lorber discussed the record evidence and testified that Plaintiff's spinal condition did not currently meet or equal Listing 1.04A or 1.04B. (Tr. 705-08). Dr. Lorber stated that he believed Plaintiff had a closed period of disability from the date of his alleged onset, November 2003, extending for no more than one year. (Tr. 708).

Dr. Lorber found that after November 11, 2004, Plaintiff was able to perform sedentary level work with a sit/stand option and occasionally bending, stooping, kneeling, and ascending stairs and ramps; but no crawling, balancing, working on slippery wet or uneven surfaces, exposure to vibration of any type, work at unprotected heights, around dangerous moving machinery, climbing ladders, scaffolds or ropes. (Tr. 708-09). Dr. Lorber also stated that he did not agree with Dr. Jacquemin's opinion that Plaintiff was precluded from performing his previous job or sedentary work because of the requirements of sitting six to eight hours per day. (Tr. 715). Dr. Lorber questioned the

basis for Dr. Jacquemin's opinion, aside from Plaintiff's subjective complaints, especially considering that he reported no gross evidence of neural compression and instructed activity as tolerated. (*Id.*)

In his decision, the ALJ found that beginning November 11, 2004, Plaintiff had the residual functional capacity ("RFC") for, essentially, sedentary work with a sit/stand option, but did not specify how frequently the claimant would need to change positions. (Tr. 21-22).

The record, however, clearly supports the fact that Plaintiff can only sit for 10 minutes at a time. (Tr. 146-47, 640-42). The vocational expert, Dr. George Parsons, testified that a need to change positions from sitting to standing every 10 minutes would make it very hard to get a job done and would, at that frequency, eventually make it very difficult for Plaintiff to maintain the concentration necessary for sustained gainful employment.[6] (Tr. 37).

The ALJ gives little weight to Ms. Marciniak's FCE because he alleges that it was based upon her acceptance of Plaintiff's subjective reports of pain. (Tr. 22). There is, however, nothing in the FCE to support this contention. In fact, the evaluation is clearly based upon Plaintiff's physical capabilities during testing, which again, were noted to be put forth with consistent effort, and upon the objective observations of Plaintiff both during the evaluation and on the surveillance footage. (Tr. 446-465).

---

[6]    Essentially, if Plaintiff's ability to sit, stand, and walk are less than 8 hours, he cannot perform full-time employment. (Tr. 720).

Furthermore, the ALJ also gives little weight to the opinion of the treating orthopedic specialist, Dr. John Jacquemin of the Freiberg Spine Institute/Freiberg Orthopaedics & Sports Medicine, that Plaintiff would be "precluded from . . . sedentary work because of the requirements of sitting 6-8 hours a day – I do not believe that, even with the ability to move or take breaks, he is going to be able to return to these types of positions."  (Ex. 34F 1-2; Tr. 641-642).  As the treating orthopedic physician, Dr. Jacquemin's opinion is entitled to controlling weight if it is well supported by medical evidence and not inconsistent with other substantial evidence in the record.  *See Robinson v. Barnhart*, 366 F.3d 1078.  Not only is the ALJ's opinion inconsistent with the objective FCE as stated, but there is ample additional medical evidence with numerous objective tests including x-rays, multiple MRI's consistently yielding abnormal findings (*see, e.g.*, Ex. 19F; Tr. 468-69, Ex. 34F-3; Tr. 643, Ex. 36F-3; Tr. 652), and an abnormal EMG consistent with chronic right lumbosacral radiculopathies (Ex. 14F 2-3; Tr. 437-38) to support Dr. Jacquemin's opinion.

Even if the ALJ finds that Dr. Jacquemin's opinion should not be entitled to controlling weight, as a medical opinion from a treating source, it is entitled to great deference and must be weighed using several regulatory factors.  *See Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004); 20 C.F.R. § 416.927.

First, the length of the treatment relationship and the frequency of examination must be examined along with the nature and extent of the treatment relationship. Dr. Jacquemin treated Plaintiff for one year and saw him on multiple occasions.  (Tr. 636-

40, 641-43, 650-52).

Second, the consistency between the opinion of the doctor and the record as a whole along with support of relevant medical evidence. Dr. Jacquemin's records clearly reflect thorough examinations of Plaintiff and varied treatment modalities including medications and injections that support his ultimate opinions. (Ex. 21F, 34F; Tr. 474-481, 641-642).

Finally, it must be considered whether the physician is a specialist in the area upon which their opinion is based. There is no question that Dr. Jacquemin is an expert in the area of orthopedic surgery of the spine, as a physician at Freiberg Orthopaedics. Therefore, it is clear that the ALJ erred in giving little weight to Dr. Jacquemin's opinion.

In addition to these relevant medical factors, Plaintiff's testimony during the hearing and throughout the record also supports the restriction of sitting in 10-minute intervals and his inability to sustain even sedentary work. (Tr. 700-05). The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. However, the ALJ failed to consider the factors and evaluations set forth in SSR 96-7.[7]

---

[7]    Those factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 SSR LEXIS 4, at *8. *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004) (noting that an ALJ should consider these factors).

There are specific factual errors in the decision which effect Plaintiff's credibility. First, the decision references that in August 2004, Plaintiff was taking care of his three children and doing activities around the house. (Tr. 21). While Plaintiff did state that he was home with his children, what the ALJ fails to note is that family and fellow church members often came to his house to help with household activities and childcare, and that his wife worked less than 10 minutes away and came home as needed during the day. (Ex. 17F-3; Tr. 448, 700-703).

Additionally, the ALJ states that Plaintiff testified that he traveled 10 hours in a car to Chicago and Arkansas which is inconsistent with his ability to sit for an extended period of time. (Tr. 21). Plaintiff, however, testified that his family traveled by conversion van and that he lay down in the back of the van while his wife drove. (Tr. 716-17). The ALJ found that Plaintiff's explanation was not "realistic or credible" despite an affidavit from Plaintiff's wife corroborating this testimony along with pictures of a bed in the back of the conversion van. (Tr. 28; Doc. 8, Ex. 1). Accordingly, the ALJ did not establish the requisite basis under which to discredit Plaintiff's testimony.

Furthermore, the ALJ did not adequately consider Plaintiff's medical treatment history pursuant to SSR 96-7. Plaintiff has an extensive medical history of seeking treatment for chronic, intense back pain. Plaintiff also underwent numerous treatment modalities in an effort to alleviate his pain including medications, pain clinic treatment, massage therapy, acupuncture, chiropractic care, TENS unit, epidural steroid injections and multiple courses of physical therapy.

Therefore, the ALJ's failure to accept a 10-minute sitting restriction and to reject the opinion of the treating orthopedic doctor was in error. Acceptance of the 10-minute sitting restriction, according to vocational expert testimony, would preclude Plaintiff's ability to sustain remunerative employment, and, corresponds with the treating physician's opinion.

Accordingly, the ALJ's failure to properly consider Plaintiff's restrictions renders his decision not supported by substantial evidence.

## B.

For his second assignment of error, Plaintiff claims that the ALJ erred in finding that after November 11, 2004, Plaintiff no longer met Listing 1.04, thereby rejecting the opinion of the treating specialists.

Listing 1.04A and B provide:

> *Disorders of the spine* (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg-raising test (sitting and supine);
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful

dysesthesia, resulting in the need for changes in position or
posture more than once every two hours;

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A, 1.04B.

The treating physicians for Plaintiff's long-standing back conditions are Dr. John

Jacquemin, orthopedic, and Dr. Rajbir Minhas, pain management, at the Freiberg Spine

Institute/Freiberg Orthopaedics & Sports Medicine.  On August 11, 2005, Dr. Jacquemin

opined that Plaintiff met Listing 1.04(A) due to evidence of nerve root compression with

associated neuro-anatomic distribution of pain and limitation of motion of the spine and

1.04(B) for his diagnosis of arachnoiditis.  (Ex. 33F; Tr. 638-640).  The ALJ rejects this

opinion, and in fact, gives Dr. Jacquemin's opinion no weight.

However, as discussed above (*See* Section II.A), Dr. Jacquemin's opinion is

entitled to controlling weight if it is well supported by medical evidence and not

inconsistent with other substantial evidence in the record.  *See Robinson v. Barnhart*, 366

F.3d 1078.  There is ample medical evidence in this case with numerous objective tests

including x-rays, multiple MRI's consistently yielding abnormal findings (*see, e.g.* Ex.

19F; Tr. 468-469, Ex. 34F-3; Tr.  643, Ex. 36F-3; Tr. 652), and an abnormal EMG

consistent with chronic right lumbosacral radiculopathies (Ex. 14F 2-3; Tr. 437-438),

which are sufficient to support Dr. Jacquemin's opinion that Plaintiff meets a medical

listing.

Based upon the testimony of the medical advisor, Dr. Arthur Lorber, the ALJ

found that the medical evidence did not support a diagnosis of arachnoiditis or of nerve

root compression significant enough to meet Listings 1.04(A) or (B) after November 11,

2004.

In order to assess an appropriate listing, the sections of the Listing should be considered separately. Dr. Lorber testified that there was no reason to believe that Plaintiff has arachnoiditis, because it normally results from unusual trauma to the spine or injection that is not present in this case. (Tr. 699). He does, however, acknowledge that arachnoiditis can develop without these factors, but concludes, since it is a rare diagnosis, that Plaintiff is not suffering from arachnoiditis and therefore does not meet Listing 1.04(B). (Tr. 699-700). There are two specific imaging studies which form the basis for a diagnosis of arachnoiditis in this case. An MRI performed on July 29, 2005 showed: "peripheralization of the nerve roots within the thecal sac at the L5-S1 disc space level . . . findings that can be seen with arachnoiditis" (Ex. 34F-3; Tr. 643) and another MRI taken on January 27, 2006 again revealed "L5-S1 peripheralization of the nerve roots in the cauda equine which can be seen as arachnoiditis or a normal variant." (Ex. 36F-3; Tr. 652). Both radiologists agree that the MRI findings can represent arachnoiditis. (*Id.*) Additionally, based upon his numerous examinations, the treating pain management physician, Dr. Minhas, found arachnoiditis to be an accurate diagnosis. (Tr. 654-58).

In considering whether Plaintiff continued to meet Listing 1.04(A) after November 11, 2004, the focus must be not on the diagnosis, but whether there is evidence of nerve root compression. There is clear evidence of nerve root compression, in both the MRI tests taken on July 29, 2005 and January 27, 2006 and in the abnormal EMG findings of chronic right lumbosacral radiculopathies. (Tr. 641-657). Moreover, the treating

orthopedic physician, Dr. Jacquemin unequivocally states that Plaintiff meets Listing 1.04(A). (Ex. 33F; Tr. 638-40). It is clear that the ALJ failed to give the treating physicians the required controlling weight, or, in the alternative, at least the deference to which their opinions are entitled.

Therefore, the ALJ's nondisability finding is not supported by substantial medical evidence.

## III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d

at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here proof of disability <u>is</u> overwhelming and remand will serve no purpose other than delay. As fully recited herein, in view of Plaintiff's assertions of disability, the extensive medical record of evidence of disability, and the credible and controlling findings and opinions of Plaintiff's examining and treating physicians, proof of disability is overwhelming.

## IV.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner, that Plaintiff was not entitled to a period of disability and disability income benefits beginning on November 11, 2004, be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case be **CLOSED**.


Date:  <u>July 14. 2009</u>            <u>s/ Timothy S. Black</u>
                                       Timothy S. Black
                                       United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BENJAMIN PHILLIPS,               :       Case No. 1:08-cv-333
                                 :
        Plaintiff,               :       Chief Judge Susan J. Dlott
                                 :       Magistrate Judge Timothy S. Black
vs.                              :
                                 :
COMMISSIONER OF                  :
SOCIAL SECURITY,                 :
                                 :
        Defendant.               :

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to the proposed findings and recommendations within **TEN DAYS** after being

served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this

period is automatically extended to **THIRTEEN DAYS** (excluding intervening

Saturdays, Sundays, and legal holidays) when this Report is being served by mail and

may be extended further by the Court on timely motion for an extension.  Such objections

shall specify the portions of the Report objected to and shall be accompanied by a

memorandum of law in support of the objections.  A party may respond to another party's

objections within **TEN DAYS** after being served with a copy thereof.  Failure to make

objections in accordance with this procedure may forfeit rights on appeal.  *See United*

*States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).